[No. 11538.  Department Two.  February 21, 1914.]

George F. Smith et al., *Appellants*, v. Kent Lumber Company et al., *Respondents.*[1]

Guardian and Ward—Accounting—Evidence—Sufficiency. The evidence supports findings that a guardian had fully accounted to his wards for the value of stock in a corporation in which their father had been interested, where it appears that the corporation was insolvent and the stock of no value at the time of the death of the father, and was abandoned, and that the guardian had paid out for their support and in settlement with them more than the full value of the estate in the hands of the guardian.

Appeal from a judgment of the superior court for King county, Smith, J., entered May 19, 1913, upon findings in favor of the defendants, in an action for an accounting. Affirmed.

*Edward Judd,* for appellants.

*John G. Barnes* (*Milo A. Root,* of counsel), for respondents.

Morris, J.—Appellants sought in this action to obtain an accounting of all the affairs of the respondent lumber company from the time of the death of their father and husband, George A. Smith, in October, 1898; alleging that, at the time of his death, George A. Smith was the owner of ten shares of the capital stock of the lumber company, of the par value of $100 per share; that, at such time, the lumber company was possessed of a valuable milling property and various lands and timber rights of great value; and that,

[1]Reported in 138 Pac. 879.

upon the death of George A. Smith, the respondents other than the lumber company, who were the father and brothers of George A. Smith, entered into a conspiracy to deprive the appellants of the interest of George A. Smith in the lumber company, and have successfully carried out such conspiracy. The complaint then recites the appointment of respondent Albert E. Smith as guardian of the children of his brother George, and his failure to render any account until April, 1912, in which account it was falsely stated that full settlement had been made with his wards. Other allegations follow, alleging fraud as to the widow. Each of the respondents made answer to the complaint, and the cause coming on to be heard, the lower court found against appellants, and they have appealed.

There was no evidence on the part of the appellants that supported the charge of conspiracy made in the complaint, or the allegations of value of the Kent Lumber Company and its holdings at the time of the death of George A. Smith. On the contrary it is shown that the lumber company, which was practically the Smith family incorporated, was then insolvent, its lands mortgaged and subsequently lost on foreclosure; the mill itself was burned down. And we can find no evidence that would justify us in finding that, at the time George A. Smith died, the shares of stock then standing in his name were of any value. In fact, it might be said the corporation was abandoned prior to his death. Albert E. Smith, who has at all times been the main business head of the lumber company and director of its activities, had gone to Alaska seeking to retrieve his fortunes, and George A. Smith had virtually left the company, which was then indebted to him in the sum of $1,100; and not being able to obtain any payment for this indebtedness, he, on behalf of the company, executed to himself a note for $600 and took five shares of stock for the remaining $500, and went east on a visit.

Albert E. Smith made some money in Alaska and, return-ing after the death of his brother George, again embarked in the lumber business with his father and remaining brother, under the old incorporation. This business has been fairly successful. At the time George A. Smith died, he had prac-tically nothing. The expenses of his last sickness, together with the funeral expenses, were paid by his father. Arrange-ments were then entered into with the widow for the care and support of herself and the three minor children, under which the father and two brothers paid the debts of George A. Smith, and conveyed to the widow a small tract of land across the street from the lands then occupied by the house in which she was living, and which was included in the de-scription covered by the mortgage subsequently foreclosed. The father and brothers paid the cost of removing the house from the old to the new location across the street, and from the time of George A. Smith's death in October, 1898, until June, 1905, they expended and paid for the benefit of the widow and the three children the sum of $2,906.38. The widow remarried in 1903, at which time she assigned five shares of the stock, standing in the name of George A. Smith at the time of his death, to her brother in law Ziba L. Smith. There can be no doubt, at the time this assignment was made, but that the widow understood that the father and two brothers, in contributing as they had to the support of her-self and the three children, had more than paid any value the stock might have had, and that she made the assignment in full realization of this fact.

When the widow was remarried, it seems to have been agreed that Albert E. Smith should act as guardian for the three children, and he was appointed as such, and thereafter paid to the widow $13.50 a month for the support of the two girls and $15 a month for the support of the boy. These payments aggregated approximately $3,000, and the lower court has found that they more than equaled the value

of the remaining five shares of stock, and that it was understood that, when the minors severally reached their majority, they would assign their interest in these five shares to their uncle Albert. Under this understanding, as before said, Albert paid for the use and benefit of these three children approximately $3,000.

The son attained his majority in November, 1909, and shortly thereafter he received from his uncle an itemized statement of the moneys paid out in his behalf, with an offer of $300 additional for a transfer of his interest in the five shares. This offer was accepted by the son, after he had made some investigation into the affairs of the lumber company and the value of its stock. When the oldest daughter came of age, she desired to make the same arrangement with her uncle as had been made by her brother, and likewise transferred her interest in the five shares to her uncle for a like sum. The youngest daughter desired to get married before she became of age, and, together with her mother, requested the uncle to make the same payment to her as had been made to her brother and sister, agreeing that she would, when she became of age, make a like transfer of her interest in the five shares. The uncle accepted this offer and paid her at the time $150, and subsequent to her marriage offered to pay the remaining $150, which payment, together with the transfer of the stock, was refused. In April, 1912, a decree was entered in the guardianship proceedings, approving the account of Albert E. Smith as guardian for the three minors and transferring to him the one-third interest in the five shares of stock represented by the interest of the youngest daughter, in full settlement of the moneys paid out by the guardian for her support during her minority.

From these facts, the lower court has concluded that the complaint should be dismissed, with which conclusion we concur. It is plain that the appellants have received more than the full value for the estate left by George A. Smith,

and that they have nothing to complain of in the treatment they have received from the respondents.

The judgment is affirmed.

CROW, C. J., PARKER, FULLERTON, and MOUNT, JJ., concur.